Filed 7/19/22 In re Y.V. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Y.V., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B317243 (Super. Ct. No. J072546) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. M.V., Defendant and Appellant. | |

M.V. appeals from the juvenile court's order terminating parental rights to his minor daughter, Y.V., and selecting adoption as the permanent plan. (See Welf. & Inst. Code,[1] § 366.26.) He contends the court erred when it concluded that

---

[1] Statutory references are to the Welfare and Institutions Code.

the sibling relationship exception to the termination of parental rights did not apply.  We affirm.

FACTUAL AND PROCEDURAL HISTORY

In June 2020, the Ventura County Human Services Agency (HSA) petitioned the juvenile court to remove Y.V. from the custody of her parents, I.A. (Mother) and M.V. (Father), after the two had an argument over where six-month-old Y.V. would stay that night.  During the argument Mother pushed Father while he held Y.V.  Father pushed Mother while she held Y.V.  Mother then choked Father.  She had him in a headlock when police arrived and arrested them both.

HSA social workers alleged that Y.V. was in danger based on this incident, because Father had previously disobeyed a restraining order, and because both Mother and Father had histories of domestic violence and substance abuse.  Mother and Father did not contest the petition, and the juvenile court ordered Y.V. placed with Father's cousin.  The court also ordered reunification services.

At the six-month review hearing, Mother revealed that she was pregnant with Father's child.  Both she and Father had enrolled in domestic violence counseling and substance abuse services and had made "moderate" progress.  The juvenile court found these steps encouraging and ordered six more months of reunification services.

E.V. was born in March 2021.  He initially lived with Mother, but was removed from her custody in May and placed with Y.V. in the paternal cousin's home.

At the 12-month review hearing in June, the juvenile court found that Mother had made "minimal" progress, while Father's progress was "nil."  The court ordered a hearing to develop a

2

permanent plan for Y.V.  Mother challenged that order in a writ petition, which this court denied.

At the section 366.26 hearing, HSA recommended that the juvenile court terminate Mother and Father's parental rights and select adoption as the permanent plan.  An HSA social worker testified that she had observed Y.V. and E.V. during four visits over the previous three months.  The children had a "strong relationship" and were "close."  They looked for each other and played together during the social worker's visits.  E.V. often watched Y.V. as she played.  The social worker nevertheless recommended adoption as the best way to ensure Y.V.'s long-term stability.

Mother and Father also testified.  They told the court that Y.V. was attentive to her younger brother during their visits.  She would say his name, get toys for him, and help Father clean him.

At the conclusion of the hearing, Father argued the juvenile court should not terminate parental rights because the sibling relationship exception applied.  Counsel for Y.V. countered that the evidence did not show that terminating the relationship between Y.V and E.V. would be detrimental to Y.V.  He also argued that adoption was in Y.V.'s best interest.

The juvenile court concluded that the sibling relationship exception to terminating parental rights did not apply because two-year-old Y.V. and nine-month-old E.V. did not have "the type of sibling relationship or bond that would overcome the benefits of adoption" for Y.V.  E.V. had lived with Y.V. for only six months of his short life.  While Y.V. was attentive to her brother when they played, there was little additional evidence of their bond.  Moreover, there was no evidence showing that terminating

3

parental rights would interfere with what bond they did have: Y.V.'s guardians had good relationships with Mother and Father and expressed their intention to allow Y.V. to visit her brother even if Y.V. were adopted and E.V. reunited with his parents. The court thus terminated parental rights, and selected adoption as Y.V.'s permanent plan.

DISCUSSION

Father contends the juvenile court erred when it concluded that the sibling relationship exception to terminating parental rights did not apply. We disagree.

A juvenile court shall not terminate parental rights if a child's parent shows that doing so would result in "substantial interference with [the] child's sibling relationship, taking into consideration the nature and extent of the relationship, including . . . whether the child was raised with a sibling in the same home, whether the child shared significant common experiences or has existing close and strong bonds with a sibling, and whether ongoing contact is in the child's best interest, including the child's long-term emotional interest, as compared to the benefit of legal permanence through adoption." (§ 366.26, subd. (c)(1)(B)(v).) The parent opposing adoption has a "'heavy burden'" when attempting to show that the sibling relationship exception applies. (*In re Celine R.* (2003) 31 Cal.4th 45, 61.) They will successfully carry that burden only if they show "'that there is a "compelling reason" for concluding that the termination of parental rights would be "detrimental" to the child due to "substantial interference" with a sibling relationship.'" (*Ibid.*) But even if they make that showing, the court must also "weigh the benefit to the child of continuing the sibling relationship

4

against the benefit the child would receive by gaining a permanent home through adoption." (*Ibid.*)

We review the juvenile court's determination that Y.V. and E.V. did not have the close, strong bond required to apply the sibling relationship exception for substantial evidence. (*In re J.S.* (2017) 10 Cal.App.5th 1071, 1080.) We then review the court's decision to terminate Father's parental rights for abuse of discretion. (*Ibid.*) "[B]oth standards call for a high degree of appellate court deference." (*Ibid.*) "[T]he ultimate question is whether adoption would be detrimental to [Y.V.], not someone else." (*In re Celine R.*, *supra*, 31 Cal.4th at p. 55.)

Substantial evidence supports the juvenile court's finding that Y.V. and E.V. did not have the bond required for the sibling relationship exception to apply. *In re I.R.* (2014) 226 Cal.App.4th 201 is instructive. In *I.R.*, our colleagues in the Third District concluded that the sibling relationship exception did not apply to the youngest of three siblings because she was "too young to even understand that the [other] minors [were] her siblings." (*Id.* at p. 215.) The children in that case were an infant and two- and three-year-old toddlers. (*Id.* at p. 214.) The toddlers talked with and about the infant, and the younger toddler would be rocked with her. (*Ibid.*) But besides those limited interactions, "none of [the children's] experiences . . . were shared in any meaningful sense." (*Id.* at pp. 214-215.) The children were simply too young and undeveloped for a "significant sibling relationship." (*Id.* at p. 214.)

The same is true here. At the section 366.26 hearing, E.V. was less than nine months old, and had lived with Y.V. for only six of those months. While the two were affectionate and attentive toward each other when they played, there was little

5

additional evidence of any deep, meaningful bond. The evidence did not establish a "significant sibling relationship."

This case is unlike *In re Naomi P.* (2005) 132 Cal.App.4th 808, on which Father relies. The potentially adoptable child in the case was four years old, while her siblings ranged in ages from 12 to 17. (*Id.* at p. 811.) The juvenile court there found that the sibling relationship exception did apply, based largely on the credible testimony of the older siblings. (*Id.* at p. 821.) Our colleagues in Division 4 concluded that that finding was supported by substantial evidence, noting that it was not the appellate court's role to interfere with the juvenile court's assessment of witness demeanor and credibility. (*Id.* at p. 824.)

Here, in contrast, Y.V. is young and has no older siblings who testified on her behalf. More significantly, the juvenile court found that the sibling relationship exception did not apply based on its assessment of the testimony and evidence presented at the section 366.26 hearing. Applying the same substantial evidence rule in *In re Naomi P.*, *supra*, 132 Cal.App.4th 108, we conclude it is not this court's role to interfere with those determinations. Substantial evidence supports the juvenile court's finding that Y.V. had not developed the type of bond with E.V. for the sibling relationship exception to apply.

But even if she had, Father has not shown that the juvenile court abused its discretion when it concluded that the benefits of adoption outweighed any detriment to Y.V. and terminated his parental rights. During the section 366.26 hearing, the social worker said that adoption was "important" for Y.V. and would give her a "more stable" life. In contrast, there was no evidence that adoption would be detrimental to Y.V. or her relationship with her brother. To the contrary, Y.V.'s prospective adoptive

6

parents said that they would continue to let Y.V. see E.V. and develop the bond that she had with him—an important mitigating factor for the court to consider when evaluating whether terminating Father's parental rights would substantially interfere with Y.V. and E.V.'s relationship. (*In re D.O.* (2016) 247 Cal.App.4th 166, 175-176.) This is thus not one of those """"rare"""" instances in which the sibling relationship exception applies. (*Id*. at p. 174.)

DISPOSITION

The juvenile court's order terminating Father's parental rights, entered December 17, 2021, is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

7

Tari L. Cody, Judge

Superior Court County of Ventura

_____

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Tiffany North, County Counsel, and Joseph J. Randazzo, Assistant County Counsel, for Plaintiff and Respondent.